## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Myer's Lawn Care Services, Inc., <br><br>          Appellant, <br><br>     -v- <br><br> Robert Pryor, <br><br>          Appellee. | 2:23-cv-3346 (NJC) |

## <u>OPINION AND ORDER</u>

NUSRAT J. CHOUDHURY, District Judge:

   This appeal arises from a contract dispute between Appellant Myer's Lawn Care

Services, Inc. ("Myer's") and Russ Fragala Landscape Corporation (the "Corporation").

Myer's seeks to recover damages for breach of contract from Russell Fragala ("Fragala"),

the president of the Corporation, in Fragala's individual bankruptcy proceeding

("Bankruptcy Action")[1].[2] Appellee Robert Pryor ("Pryor"), the trustee of Fragala's

bankruptcy estate, moved to expunge Myer's' claim against the estate. (Bankr. ECF No.

85, **R. at 961**.) After receiving full briefing and conducting two hearings on the motion,

---

[1] The Bankruptcy Action is docketed as *In re Russell Fragala*, 19-br-75714 (Bankr. E.D.N.Y.). "Bankr. ECF" refers to citations to the electronic record in that proceeding.

[2] *See* Appellant's Br. ("Myer's' Br.") at 2, ECF No. 24; Appellee's Br. ("Pryor's Br.") at 3, ECF No. 26; Bankr. ECF No. 21-8 ¶¶ 2, 4, **R. at 226**; Bankr. ECF No. 94-3, **R. at 998**.

the bankruptcy court issued an order expunging Myer's' claim ("Expungement Order").[3]

Myer's now appeals. For the following reasons, I affirm the bankruptcy court's order.[4]

## BACKGROUND

### I.     State Court Action

In September 2017, Myer's sued the Corporation and Fragala, who was alleged to be an "employee/agent" of the Corporation, in Maryland state court for breach of a series of snow-removal contracts ("State Court Action").[5] (*See* Bankr. Claims Register, Claim No. 1-1 ("Proof of Claim"), Ex. 2; Bankr. ECF No. 97-1, **R. at 1020–224**.)[6] Myer's alleged that the Corporation and Fragala failed to provide full payment to Myer's for its snow-removal services. (*Id.*) The snow-removal contracts at issue are not in the record on this appeal.

On January 1, 2018, Fragala and the Corporation together served a counter-complaint on Myer's alleging that Myer's damaged the work sites from which snow was removed, requiring the Corporation to incur $83,755 in expenses for repairs. (Bankr. ECF No. 21-8, **R. at 230**.) Myer's filed an amended complaint. (*See* Bankr. ECF No. 21-8, **R.**

---

[3] *See* Bankr. ECF Nos. 85, 94, 102, 106, 108, 110 (Expungement Order), 118, 120; **R. at 961–1068, 1116–1149**; *see also* Bankr. ECF No. 126.

[4] I deny Myer's' request for oral argument on this appeal. (Myer's' Br. at 50.) The facts and legal arguments regarding this appeal are adequately presented in the briefs and in the record, and my decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr. P. 8019(b)(3).

[5] The State Court Action is docketed as *Myer's Lawn Care Services, Inc. v. Russ Fragala and Russ Fragala D/B/A Russ Fragala Landscape Corporation*, No. 06-C-17-074219 (Carroll Cnty., Maryland).

[6] "Bankr. Claims Register" refers to the electronic claims register docket in *In re Russell Fragala*, 19-br-75714 (Bankr. E.D.N.Y.).

**at 226**.) On May 31, 2018, Fragala moved to dismiss the amended complaint against him, arguing that, as president of the Corporation, he could not be held liable for any breach of the Corporation's contracts with Myer's. (*Id.* ¶¶ 2, 4.)

## II.   Bankruptcy Action

Fragala filed an individual petition for bankruptcy under Chapter 7 of the Bankruptcy Code on August 15, 2019. (Bankr. ECF No. 1, **R. at 10**.) On October 7, 2019, the Maryland court issued an order staying and suspending the State Court Action because of the pending Bankruptcy Action. (Bankr. ECF No. 12 at 76, **R. at 166**.)[7]

On November 19, 2019, Myer's filed a proof of an unsecured claim in Fragala's Bankruptcy Action (the "Claim"), claiming that Fragala individually owed Myer's a debt of $92,366.80 for breach of the snow-removal contracts. (Proof of Claim, Bankr. Claims Register, Claim No. 1-1, **R. at 1020–22**.) Myer's attached two supporting exhibits. (*Id.*) First, Myer's submitted a short document titled "Statement of Account of Russell Fragala" stating that Fragala owed Myer's $92,366.80, which was calculated by adding a $58,4600 "Unpaid Balance as of March 3, 2017" and $33,906.80 in "[l]ate charges @ 2% per month up to August 3, 2019." (Proof of Claim, Ex. 1, **R. at 1023**.)

---

[7] Before the state court issued this order, Fragala had initiated an adversary proceeding related to the Bankruptcy Action against Myer's and Myer's' counsel, William Burke, by filing a complaint alleging that Myer's and Burke had been litigating the State Court Action in violation of the automatic stay of proceedings against Fragala under 11 U.S.C. § 362(a), which went into effect when Fragala filed for bankruptcy. Fragala moved for a preliminary injunction prohibiting Myer's and Burke from litigating the State Court Action. (Bankr. ECF Nos. 11–12, **R. at 85–92**.) Myer's opposed the request, asserting that it had filed a motion to stay the State Court Action on September 28, 2019 in response to a demand letter from Fragala's then-counsel. (Bankr. ECF No. 19 at 1, 12, **R. at 178, 189**.) The state court granted Myer's' motion to stay the State Court Action on October 7, 2019, and the adversary proceeding Fragala initiated against Myer's was closed on November 15, 2019. (Bankr. Not., Nov. 15, 2019, **R. at 1228**.)

Second, Myer's submitted a document filed in the State Court Action titled "Plaintiffs' [sic] Pretrial Statement." (Proof of Claim, Ex. 2, **R. at 1024**.) In this document, Myer's referred to Fragala and the Corporation collectively as "Fragala." (*Id.* at 1, **R. at 1024**.) The Pretrial Statement asserts that the Corporation was "neither registered as a Corporation or a Limited Liability Company with the Maryland State Department of Assessments and Taxation on the date of the contracts[] from which this case arises." (*Id.*) It further asserts that "Fragala"—defined as the individual and Corporation collectively—"withheld $58,460.00[] rightfully owed Myer's" under snow-removal contracts "under the false representation that Myer's had caused considerable damage to all of the [snow-removal] sites." (*Id.* at 9, **R. at 1032**.) It also alleges that "Fragala filed a Counter-Complaint against Myer's, dated January 10, 2018, demanding[] '$83,755.00 plus travel expenses, reasonable attorney fees, interest and costs' as compensation for expenses Fragala allegedly incurred to repair the damages he claims Myer's caused." (*Id.* at 6, **R. at 1029**.) The Pretrial Statement references numerous exhibits, but none of them were filed in support of Myer's' Proof of Claim in Fragala's Chapter 7 bankruptcy proceeding. (*See* Proof of Claim.) While Myer's represents in its briefing to this Court that the snow removal contracts were in writing, Myer's did not file any written contracts in connection with the Claim. (*See* Myer's' Br. at 3, ECF No. 24 ("The Subcontracts were signed on November 3, 2016."); *see also* Proof of Claim, Ex. 2 at 2, **R. at 1025**.)

### III.    Adversary Proceeding

On November 25, 2019, Myer's initiated a related adversary proceeding against Fragala (the "Adversary Proceeding"), alleging that Myer's' Claim against Fragala's estate was not dischargeable in the Bankruptcy Action pursuant to the statutory

exceptions to discharge for cases of "false representation" or "willful and malicious injury" under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). (Bankr. ECF No. 27, **R. at 286–305**.)[8]

## IV.   Lack of Assets in the Bankruptcy Action

On April 12, 2021, Pryor filed a report of no distribution in the Bankruptcy Action. (Bankr. Not., Apr. 12, 2021, **R. at 1100**.) In that report, Pryor reported that he

> ha[d] neither received any property nor paid any money on account of this estate; that [he] . . . made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law.

(*Id.*)

## V.   Trial in the Adversary Proceeding

In May 2022, Judge Grossman presided over a two-day bench trial in the Adversary Proceeding. (*See* Adv. Proc. Min. Entries, May 2, 2022 & May 3, 2022.) On September 22, 2022, the bankruptcy court issued a memorandum of decision ("Dischargeability Opinion") in which the court made several factual findings and legal determinations. (*See* Dischargeability Op., Bankr. ECF No. 120, **R. at 1154–70**.) First, the court found that New York law governed Myer's' allegations in the adversary complaint, and that the allegations "did not satisfy the necessary elements of corporate veil piercing under New York law." (*Id.* at 9, **R. at 1162**.) The court found, however, that "the outcome of this veil piercing analysis is not determinative of whether Myer's has a claim against the Debtor [Fragala] in this case," and that "as of this writing [on

---

[8] The Adversary Proceeding is docketed as *Myer's Lawn Care Services, Inc. v. Fragala et al*, No. 19-ap-08150 (Bankr. E.D.N.Y.). "Adv. Proc. ECF" refers to citations to the electronic record of the Adversary Proceeding.

September 22, 2022] Myer's has an allowed claim in the amount of $93,366.80" against Fragala's estate "by virtue of the uncontested proof of claim filed by Myer's against [Fragala]" under 11 U.S.C. § 502(a) and Rule 3001(f), Fed. R. Bankr. P. (*Id.* at 1, 8, **R. at 1154, 1161**.)

Lastly, the court found that the Claim was dischargeable in bankruptcy because Myer's failed to prove that the Claim satisfied the exception to discharge for "false representation" or for "willful and malicious injury" under 11 U.S.C. §§ 523(a)(2)(A) or (2)(6). (*Id.* at 12–15, **R. at 1165–68**.) Judgment was entered for Fragala in the Adversary Proceeding on September 22, 2022. (Bankr. ECF No. 121, **R. at 1172**.) On October 5, 2022, Myer's filed a notice of appeal of the Dischargeability Opinion. *Fragala et al. v. Fragala*, No. 22-cv-5980, ECF No. 1 ("Dischargeability Appeal").)

### VI.    Discovery of Assets in the Bankruptcy Action

On May 18, 2022, after the conclusion of trial in the Adversary Proceeding, Pryor rescinded his prior report of no distribution in the Bankruptcy Action. (Bankr. ECF No. 56, **R. at 584**.) Pryor filed this recission when he became aware that Fragala had understated the value of real property he owned, and that contrary to Pryor's previous belief, this property was likely not encumbered by a mortgage. (Pryor's Br. at 5, ECF No. 26; *see also* Bankr. ECF No. 64 at 4–5, **R. at 590–91**.) Based on this new information, Pryor determined that the estate likely had "significant equity" due to the property. (Bankr. ECF No. 64 at 4–5, **R. at 590–91**.) On November 28, 2022, two months after judgment entered in the Adversary Proceeding, the court issued an order in the Bankruptcy Action authorizing Pryor to sell Fragala's real property. (Bankr. ECF No. 80, **R. at 933**.)

### VII.    The Bankruptcy Court's Ruling on Pryor's Motion to Expunge

On February 2, 2023, Pryor filed a Motion to Expunge Myer's' Claim against

Fragala's estate pursuant to 11 U.S.C. §§ 502(a), 502(b)(1) and Rule 3007 of the Federal

Rules of Bankruptcy Procedure or, in the alternative, to "reconsider[] the Court's decision

of September 22, 2022 [the Dischargeability Opinion]" pursuant to 11 U.S.C. § 502(j)

and Rule 3008, Fed. R. Bankr. P. (Bankr. ECF No. 85 at 1, 6, **R. at 963, 968**.) The parties

submitted briefing, and the bankruptcy court heard argument on Pryor's Motion on

March 13, 2023 and April 14, 2023.[9] The court heard argument on the two primary

contested issues raised by the parties: (1) whether Pryor's objection was timely, and (2)

whether Myer's could recover from Fragala's individual bankruptcy estate damages for

the Corporation's alleged breach of contract on the theory that Fragala waived the

protections of the corporate form by answering and filing a counter-complaint in his

individual capacity in the prior State Court Action. (Bankr. ECF Nos. 85, 94, 97, **R. at**

**966, 970, 1013**; Mar. 13 Hr'g, **R. at 1116**; Apr. 24 Hr'g.)

The court orally ruled that Pryor's motion was timely and permitted the parties to

submit supplemental briefing relating to the second issue, which concerned whether

Pryor, when objecting to a claim, is bound by Fragala's positions and statements in the

State Court Action. (Mar. 13 Hr'g at 12, 21, **R. at 1127, 1136**.) The parties submitted

supplemental briefing and, on April 24, 2023, the court held a second hearing and issued

an oral ruling granting the motion and expunging Myer's' Claim. (Bankr. ECF Nos. 102,

108, **R. at 1036, 1063**; Apr. 24 Hr'g.)

---

[9] Bankr. ECF Nos. 85, 94, 97, **R. at 966, 970, 1013**; Tr. Mot. Hr'g, Mar. 13, 2023 ("Mar. 13 Hr'g"), Bankr. ECF No. 118, **R. at 1116**; Tr. Mot. Hr'g, Apr. 24, 2023 ("Apr. 24 Hr'g"), Bankr. ECF No. 126.

A.  Timeliness of Pryor's Objection to the Claim

At the March 13, 2023 hearing, the court orally ruled, over the objection of

Myer's, that Pryor's Motion to Expunge the Claim was timely. (Mar. 13 Hr'g. at 12, **R.**

**at 1127**.) Myer's had argued that because the court ruled in the Dischargeability Opinion

that its Claim was "allowed" and judgment had entered reflecting that ruling, Pryor could

only object to Myer's' Claim in the Bankruptcy Action through a motion for relief from a

judgment or order, which is governed by Federal Rule of Bankruptcy Procedure 9024

("Bankruptcy Rule 9024") and Federal Rule of Civil Procedure 60 ("Rule 60"). (Bankr.

ECF No. 94 at 7, **R. at 976**.) Myer's argued that Pryor's objection was improper because

Pryor failed to comply with Rule 60 for two independent reasons: (1) the motion failed to

set forth an appropriate basis for relief from a judgment as required by Rule 60(b), and

(2) the four and a half month delay between when judgment entered in the Adversary

Proceeding and when Pryor's filed an objection to the Claim in the Bankruptcy Action

was unreasonable, in violation of Rule 60(c)(1). (Bankr. ECF No. 94 at 7–8, **R. at 976–**

**77**.)

The court disagreed with Myer's' analysis for two reasons. (Mar. 13 Hr'g at 11–

12, **R. at 1126–27**.) First, the court held that its conclusion in the Dischargeability

Opinion was a due to "blackletter law [that] a claim filed for which there is no objection

is a prima facie claim," but that "nothing in that statement . . . then says . . . someone

can't file an objection, . . . because to do that, [the court] would be cutting off the rights

that only the Trustee has to object to claims." (Mar. 13 Hr'g at 11, **R. at 1126**.)

Second, the court reasoned that in bankruptcy cases where the debtor's estate has

no assets, "trustees do not object to claims" because there is "[n]o point in objecting to a

claim for which no money" can be paid, and Fragala's estate did not initially have sufficient assets to make distributions to creditors. (*Id.*) The court found that:

> the argument that Mr. Pryor as the Trustee is precluded from exercising his obligation as a Trustee to determine the validity of claims in an estate that now sits with money is misplaced. I think he absolutely has the right to do that. I don't think he was precluded by statute, by time.

(Mar. 13 Hr'g. at 12, **R. at 1127**.) The court also questioned Myer's about whether Rule 60 applied to Pryor, given that he was not a party to the Adverse Proceeding, although the court did not explicitly resolve this issue in its oral or written rulings. (Mar. 13 Hr'g. at 10–12, **R. at 1125–27**; Expungement Order.)

### B.   Protections of the Corporate Veil

After finding that Pryor timely filed the Motion to Expunge, the court heard argument on the merits. (Mar. 13 Hr'g at 19–20, **R. at 1134–35**; *see also* Apr. 24 Hr'g.) Pryor argued that the Pretrial Statement Myer's attached to its Proof of Claim was "inadequate to support the Claim filed in this case," which sought to hold Fragala personally liable for the Corporation's obligations. (Bankr. ECF No. 85 ¶ 16, **R. at 966**.) Pryor further asserted that Myer's was collaterally estopped from raising any argument that it should be able to hold Fragala personally liable for the Corporation's alleged breach of contract because, in the Adverse Proceeding, the court had ruled that Myer's failed to establish that it could pierce the corporate veil. (Bankr. ECF No. 85 ¶¶ 19–22, **R. at 966–67**.)

Myer's made three arguments in response. First, Myer's asserted that it did not need to show that it could pierce the corporate veil under New York law because Fragala waived the protections of the corporate form when, acting in his personal capacity, he filed an answer and counter-complaint against Myer's in the State Court Action. (*See*

9

Bankr. ECF No. 94 at 13, **R. at 982** ("Myer's did not have to pierce the corporate veil in the [State Court Action] because Debtor Fragala made the choice to conduct the [State Court Action] personally.")). Myer's' counsel, William Burke ("Burke"), made clear that this was Myer's' position at the March 13, 2023 hearing:

> THE COURT: . . . So is your argument that the Trustee, that you believe in this action, you wish to establish that Mr. Fragala – that the veil should be pierced? I mean, tell me if you were litigating this with Mr. Pryor, what is the litigation?
>
> MR. BURKE: **That there was no corporate veil to pierce**. Mr. Fragala clearly is—he admitted to it, he testified to it in his deposition, he is suing my client personally. The facts that are in evidence are that there was nothing stopping Mr. Fragala from pursuing my client as his corporation.

(Mar. 13 Hr'g, at 14–15, **R. at 1129–30 (emphasis supplied)**). Burke confirmed this position at the April 24, 2023 hearing when he told the bankruptcy court: "[Fragala] did not use his corporate veil or corporate shield when he pursued the case [in state court]. He chose to pursue it personally . . . ." (Apr. 24 Hr'g at 11.)

In support of this argument, Myer's attached to its opposition to the Motion to Expunge a document tilted "Addendum to 2016-2017 Snow Removal Contract" ("Addendum"), which set a timeline for payments and interest on late payments pursuant to the contracts. (Bankr. ECF No. 94-3, **R. at 998**.) The Addendum is signed by "Russ Fragala – President Russ Fragala Landscape Corp." and "Rob Meyers, Myer's Lawn Care Services." (Bankr. ECF No. 94-3, **R. at 998**.)

Second, Myer's argued that Pryor, as trustee to Fragala's estate, was bound by Fragala's actions in the State Court Action. (Mar. 13 Hr'g at 20, **R. at 1135**.) In supplemental briefing, Myer's argued that previous statements made by Fragala could be used as evidence to support Myer's' Claim. (Bankr. ECF No. 102 at 4–5, **R. at 1039–40**.)

Myer's also relied on its motion to stay the State Court Action, which it filed shortly after Fragala filed for bankruptcy. (Bankr. ECF No. 106, **R. at 1059**.)

Myer's did not argue in opposition to the Motion to Expunge that the corporate veil should be pierced because Fragala had engaged in fraudulent activity. (*See* Bankr. ECF Nos. 85, 94, 97, 102, 108, **R. at 966, 970, 1013, 1036, 1063**; Mar. 13 Hr'g, **R. at 1125**; Apr. 24 Hr'g.) At the March 13, 2023 hearing, in response to Judge Grossman's questions, Burke confirmed that Myer's did not seek to pierce the Corporation's veil in order to recover from Fragala as an individual in the Bankruptcy Action and did not seek an evidentiary hearing on this issue:

> THE COURT: Please, Mr. Burke. What is before me is the Trustee's objection to your claim. Do you believe that that creates an evidentiary question so that the Court now has to hear this question of whether or not that veil—I'll use veil [piercing], but I'm not sure that's the right term in this case—I remember all your arguments [from the Adversary Proceeding] about Maryland law and this and that. Your argument is . . . **you're seeking a hearing to determine whether or not Mr. Fragala should be held individually liable for the acts of this corporation in this proceeding. Is that right**?
>
> MR. BURKE: **No, Your Honor, I'm not.**

(Mar. 13 Hr'g at 15–16, **R. at 1130–31** (emphasis supplied).)[10]

Third, Myer's argued in its supplemental briefing that the bankruptcy court lacked authority to grant the Motion to Expunge because Myer's had already appealed the Adversary Proceeding judgment, which addressed whether Myer's' Claim was allowed.

---

[10] The March 13, 2024 hearing transcript reflects that the court used the term "veil person" rather than "veil piercing," but that appears to be a transcription error given that the court just asked Myer's whether it "wished to establish . . . the veil should be pierced . . . ." (Mar. 13 Hr'g at 14–15.)

(Bankr. ECF No. 102 at 7, **R. at 1042**.)[11] Pryor responded that the Motion to Expunge could still be litigated notwithstanding the pending appeal of the Adversary Proceeding judgment because the only issue in that appeal is whether Myer's met its burden to prove that any claim was not dischargeable—not whether Myer's' Claim is allowed or whether Myer's could pierce the corporate veil. (Bankr. ECF No. 108 at 2, **R. at 1064**.)

After hearing additional argument on April 24, 2023, Judge Grossman asked Burke to explain what theory supported Myer's' position that it had "an allowed claim in this case" other than "a veil-piercing" theory, which the court "[did not] believe exists in this case." (Apr. 24 Hr'g at 10–11.) Burke answered that Fragala "did not use his corporate veil or corporate shield when he pursued" a counterclaim in the State Court Action, but rather "[h]e chose to pursue [the claim] personally." (*Id.* at 11.) The court then orally granted Pryor's Motion to Expunge Myer's' Claim. (*Id*.) After the hearing, the court issued a written order, which reflected the oral ruling and expunged the Claim in its entirety. (Expungement Order, **R. at 1067**.) Myer's appealed that order on May 2, 2023, initiating the instant appeal. (ECF No. 1.)

**VIII.   Appeal**

Myer's' appeal of the Dischargeability Opinion and its appeal of the Expungement Order were both reassigned to my docket in October 2023. (Elec. Not., Oct. 19, 2023; Dischargeability Appeal, Elec. Not., Oct. 19, 2023.) Myer's moved to consolidate the two appeals. (ECF No. 8.) After hearing argument from the parties, I

---

[11] Myer's does not raise this same argument in this appeal. (*See generally* Myer's' Br.)

denied Myer's' motion, finding that consolidating the cases would not be fair or efficient. (Min. Entry, Dec. 21, 2023; Elec. Order, Dec. 27, 2023.)[12]

Myer's filed its opening brief in this appeal on March 20, 2024, arguing that the bankruptcy court erred in expunging the Claim for three reasons. (Myer's' Br.) First, Myer's contends that the Motion to Expunge failed to comply with the timing requirements of Rules 59(e) and 60(b), Fed. R. Civ. P. (*Id.* at 30–35.) Second, Myer's asserts that Fragala cannot defend against the Claim in the Bankruptcy Action by asserting a corporate veil defense because Fragala waived the protections of the corporate form when he filed an answer and counter-complaint in his individual capacity against Myer's in the State Court Action. (*Id.* at 35–47.) Third, Myer's argues—for the first time on appeal—that even if Fragala had not waived the protections of the corporate form, Myer's could pierce the corporate veil under New York state law because Fragala's conduct constituted actual fraud. (Myer's' Br. at 47–49.)

On April 10, 2024, Pryor filed a brief in response, making five points. (Pryor's Br.) First, Pryor asserts that he timely filed the Motion to Expunge because there is no deadline for a bankruptcy trustee to object to a claim and no authority providing that Rule 60 applies to a nonparty. (*Id.* at 10–12.) Second, Pryor argues that collateral estoppel bars

---

[12] Despite this ruling, Myer's' brief in this appeal of the Expungement Order spends nearly twenty pages recounting evidence presented at the bench trial in the Adversary Proceeding. (*See* Myer's' Br. at 2–21 (citing to documents filed in the Adversary Proceeding, Case No. 19-ap-01850).) While the bankruptcy court's post-trial decision in the adversary proceeding is in the record on this appeal (*see* ECF No. 120; **R. at 1154– 70**), the evidence to which Myer's cites—including documents and testimony admitted as evidence in the Adversary Proceeding trial—is not included in the record on this appeal. Myer's' briefing on this appeal also takes issue with some of the bankruptcy court's rulings in the Dischargeability Opinion. (*See* Myer's' Br. at 35–36; Myer's' Reply at 21.) I do not consider these arguments because the Dischargeability Opinion is the subject of a separate appeal.

Myer's from litigating the veil piercing issue because the bankruptcy court decided that issue in the Adversary Proceeding. (*Id.* at 12.) Third, Pryor argues that this Court may not consider evidence outside of the record that was before Judge Grossman when he ruled on the Motion to Expunge, including some portions of the record in the Adversary Proceeding. (*Id.* at 13–14.) Fourth, Pryor argues that New York law governs the issue of whether Myer's can pierce the corporate veil because the Corporation is a New York corporation. (*Id.* at 14.) Fifth, Pryor asserts that under New York law, Myer's failed to establish a basis to pierce the corporate veil in the Bankruptcy Action. (*Id*. at 14–17.)

Myer's filed its reply brief on April 24, 2024, making many of the same arguments that it raised in its opening brief. (*See* Myer's' Reply, ECF No. 27.)

## STANDARDS OF REVIEW

This Court has jurisdiction to hear this appeal from a bankruptcy court order under 28 U.S.C. § 158, which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges." Bankruptcy court orders expunging claims, like the Expungement Order at issue in this appeal, are final orders for purposes of appeal. *Wilmington Sav. Fund Soc'y, FSB v. Tamisi*, No. 22-cv-01982, 2023 WL 2561787, at *3 (E.D.N.Y. Mar. 17, 2023) (citations omitted).

On appeal, a district court reviews a bankruptcy court's findings of fact for clear error, its conclusions of law de novo, and "[m]atters left to the [bankruptcy] court's discretion . . . for abuse of discretion." *Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534, 538 (E.D.N.Y. 2017), *aff'd*, 734 F. App'x 68 (2d Cir. 2018).

This Court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may remand with instructions for further proceedings. *Heilbron v. Plaza*, No. 20-cv-00312, 2021 WL 1062034, at *2 (E.D.N.Y. Mar. 19, 2021); *see also* 28 U.S.C. § 2106. The court "may affirm on any grounds for which there is a record sufficient to permit conclusions of law." *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 268 (2d Cir. 2023) (alterations omitted). This includes "grounds not relied upon by the bankruptcy court." *In re Stallmer*, 792 F. App'x 856, 857 (2d Cir. 2019) (citing *Chelsey v. Union Carbide Corp.*, 927 F.2d 60, 68 (2d Cir. 1991) (brackets omitted).

## DISCUSSION

### I.     Legal Standards

"When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim — *i.e.*, a document providing proof of a 'right to payment' — against the debtor's estate." *Rora LLC v. 404 East 79th Street Lender LLC*, 630 B.R. 876, 887 (E.D.N.Y. 2021) (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007) (quoting 11 U.S.C. § 101(5)(a)); *see also* 11 U.S.C. § 501(a). A claim or interest "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Where a party in interest objects to a claim, the bankruptcy court is required to determine the amount of the claim and "shall allow such claim in such amount" unless it falls into one of nine categories enumerated under 11 U.S.C. § 502(b) ("Section 502(b)"). Under Section 502(b), a court is not required to allow a claim when it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . ." *Id.* § 502(b)(1). Only a creditor that has an allowed claim may receive a distribution from the bankruptcy

estate. *In re Brancato*, No. 8-19-75686, 2023 WL 5127334, at *6 (Bankr. E.D.N.Y. Aug. 9, 2023) (citing 11 U.S.C. § 726(a)).

Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules" or "Fed. R. Bankr. P.") sets forth a deadline for a trustee to object to a claim. *See* 11 U.S.C. § 726(a); *In re Best Payphones, Inc.*, 523 B.R. 54, 68 (Bankr. S.D.N.Y. 2015) ("Article VIII reserves jurisdiction to determine claims objections without regard to when they are filed, and bankruptcy law does not impose a statute of limitations on claims objections.") (collecting cases). The Bankruptcy Rules only require that "[a]n objection to the allowance of a claim and a notice of objection . . . be filed and served at least 30 days before any scheduled hearing on the objection or any deadline for the claimant to request a hearing." Fed. R. Bankr. P. 3007(a).

Where a bankruptcy court issues an order allowing or disallowing a proof of claim, "[a] party in interest may move for reconsideration" of that order under Rule 3008, Fed. R. Bankr. P. ("Bankruptcy Rule 3008"), and 11 U.S.C. § 502(j) ("Section 502(j)"). Fed. R. Bankr. P. 3008; 11 U.S.C. § 502(j) ("A claim that has been allowed or disallowed may be reconsidered for cause.").[13]

Courts in this Circuit treat a motion for reconsideration under Section 502(j) and Bankruptcy Rule 3008 as either a motion to alter or amend a judgment, as governed by Rule 9023, Fed. R. Bankr. P. ("Bankruptcy Rule 9023"), which incorporates Rule 59, Fed. R. Civ. P. ("Rule 59"), or as a motion for relief from a judgment or order governed

---

[13] "Courts generally do not distinguish between motions filed under [Bankruptcy Rule 3008] and motions filed under [S]ection 502(j)." *In re Enron Corp.*, 352 B.R. 363, 366 n.2 (Bankr. S.D.N.Y. 2006). I will refer to motions filed under these provisions as "Section 502(j) motions."

by Bankruptcy Rule 9024, which incorporates Rule 60. *Matter of AMR Corp.*, 566 B.R. 657, 665 (S.D.N.Y. 2017); *see also In re Tender Loving Care Health Servs., Inc.*, 562 F.3d 158, 163 (2d Cir. 2009) (analyzing a Section 502(j) motion for reconsideration under the requirements set forth in Bankruptcy Rule 9024 and Rule 60). Courts determine which Bankruptcy Rule to apply based on when the motion was filed. *Matter of AMR Corp.*, 566 B.R. at 665. Bankruptcy Rule 9023 requires a motion for reconsideration to be filed within fourteen days of the order to be reconsidered. Fed. R. Bankr. P. 9023. Where a movant files a Section 502(j) motion for reconsideration more than fourteen days after the order allowing the claim, courts analyze the motion under Bankruptcy Rule 9024. *Matter of AMR Corp.*, 566 B.R. at 665; *Tender Loving*, 562 F.3d at 162; *see also* Fed. R. Bankr. P. 9023.[14]

## II.   Pryor's Motion was not Time-Barred.

Myer's first asserts that the bankruptcy court erred in finding that Pryor's Motion to Expunge was timely. (Myer's' Br. at 30.) According to Myer's, because the court's judgment in the Adversary Proceeding stated that the Claim was allowed, Pryor's subsequent objection to the Claim was governed by Bankruptcy Rule 9042 or 9043, but was not filed within the time requirements of either rule. (*Id.* at 30–35.) Pryor argues in

---

[14] Throughout its brief, Myer's asserts that Bankruptcy Rule 9023 requires a movant to file a motion to alter or amend a judgment within ten days of the challenged order's entry. (Myer's' Br. at 3, 11, 18, 33–34.) That is incorrect. At all times during the events underlying this appeal, Bankruptcy Rule 9023 required that "a motion . . . to alter or amend a judgment" in a bankruptcy case must "be filed . . . no later than 14 days after entry of judgment." Fed. R. Bankr. P. 9023. Although the timeline to file a Bankruptcy Rule 9023 motion was previously ten days from entry of the challenged judgment, that deadline was extended to fourteen days by the 2009 amendments to Bankruptcy Rule 9023. *See* Fed. R. Bankr. P. 9023 advisory committee note to 2009 amendments; *see also* Fed. R. Civ. P. 59 advisory committee note to 2009 amendments; *In re Levelbest, LLC*, No. 19-11673, 2023 WL 187631, at *3 (Bankr. N.D.N.Y. Jan. 13, 2023).

opposition that his motion was not governed by Bankruptcy Rule 9042 or 9043 because he was not a party to the Adversary Proceeding, and thus was not bound by the judgment in that action. (Pryor's Br. at 10–12.)

These arguments present legal questions, and I therefore conduct de novo review of the bankruptcy court's ruling. I find that the Motion to Expunge was timely.

### a. The Adversary Proceeding Judgment did not Preclude Pryor From Subsequently Objecting to the Claim in the Bankruptcy Action.

Myer's initiated the Adversary Proceeding against Fragala on November 25, 2019, to determine whether its Claim was dischargeable in the Bankruptcy Action. (Bankr. ECF No. 27, **R. at 286–305**.) Pryor was not named as a party in the complaint and was not added as a party to the Adversary Proceeding at any point during the course of that action. (*See* Compl., Bankr. ECF No. 27, **R. at 286**; *see also* Dischargeability Op.)

Myer's' argument that Pryor could object to its Claim only by moving to reconsider the bankruptcy court's Dischargeability Opinion pursuant to Section 502(j) and Bankruptcy Rules 9023 and 9024 assumes that Pryor was bound by the judgment in the Adversary Proceeding. Myer's fails to provide any legal authority for this conclusion. (Myer's' Br. at 30–35).[15] Pryor asserts that his Motion was not governed by either Bankruptcy Rule 9042 or 9043 because Pryor was not bound by the judgment in the Adversary Proceeding under res judicata principles. (Pryor's Br. at 10–12.) Myer's

---

[15] In its opening brief, Myer's appears to acknowledge Pryor's argument that he was not bound by the Dischargeability Opinion because he was not a party to the Adversary Proceeding, but Myer's retorts only: "Co-Appellee Pryor cites no authority in support of his opinion. However, the **JUDGMENT** [in the Adversary Proceeding] is supported by the **<u>DECISION AFTER TRIAL</u>**, which was issued by the Bankruptcy Court that Co-Appellee [Pryor] cites to multiple times in the Objection to Claim No. 1." (Myer's' Br. at 31 (emphasis in original).)

argues that, under principles of claim and issue preclusion, Pryor is bound by the Dischargeability Opinion because he "is a party in interest" to the Adversary Proceeding or was "a privity" with Fragala, who was a party to that action. (Myer's' Reply at 3, 17–18.)

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). These preclusion doctrines "apply in bankruptcy proceedings." *In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor*, 553 U.S. at 892; *see also Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017). Issue preclusion forecloses litigation of an issue of fact or law where:

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019).[16] With respect to the third element required for issue preclusion, generally, "[a] person who was not a party to a suit . . . has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." *Taylor*, 553 U.S. 880, 892–93 (2008) (citation omitted).

---

[16] These elements derive from "[f]ederal principles of collateral estoppel," which courts apply when determining whether a "prior federal judgment has preclusive effect." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006).

Thus, in *Taylor v. Sturgell*, the Supreme Court held that nonparty preclusion is only appropriate in one of six established exceptions and described them as follows:

> First, a person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement[;] . . . . Second, nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment[;] . . . . Third, . . . in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit[;] . . . . Fourth, a nonparty is bound by a judgment if she assumed control over the litigation in which that judgment was rendered[;] . . . . Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy[;] . . . . [and] Sixth, in certain circumstances a special statutory scheme may expressly foreclose successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process.

*Id.* at 892–93 (quotation marks and alterations omitted); *see also Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 509 (2d Cir. 2019). The Supreme Court recognized that "[t]he substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity,'" but cautioned that "the term . . . has come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground." *Taylor*, 553 U.S. at 894 n.8. Thus, rather than using the term "privity," the Supreme Court emphasized that the six "discrete exceptions" permitting nonparty preclusion "apply in limited circumstances." *Id.* at 892–93.

Myer's fails to recognize the six established exceptions to the general rule against nonparty preclusion, much less argue that any of these exceptions apply to Pryor's Motion to Expunge. (Myer's' Reply at 3, 17–18.) I find that none of the six *Taylor* exceptions apply, and that Pryor therefore was not bound by Dischargeability Opinion's ruling allowing Myer's' Claim.

First, there is no indication that Pryor agreed to be bound by the judgment in the adversary proceeding to which he was not a party. *See Taylor*, 553 U.S. at 893. Indeed, Pryor took the contrary position in opposing the Motion to Expunge before the bankruptcy court.

Second, while the debtor and trustee in a bankruptcy action may have some kind of "substantive legal relationship," courts have concluded that this relationship does not permit nonparty preclusion because the trustee represents the interests of the estate and its creditors, rather than the interests of the debtor. *See e.g., In re Montgomery Ward, LLC*, 634 F.3d 732 (3rd Cir. 2011); *In re DLC, Ltd.*, 295 B.R. 593, 602 (B.A.P. 8th Cir. 2003), *aff'd sub nom. Stalnaker v. DLC, Ltd.*, 376 F.3d 819 (8th Cir. 2004); *In re Jadeco Constr. Corp.*, 606 B.R. 169, 187 (Bankr. E.D.N.Y. 2019); *In re Bryant*, 630 B.R. 671, 676–77 (Bankr. M.D. Ga. 2021); *In re Tzanides*, 574 B.R. 489, 520 (Bankr. D.N.J. 2017); *In re Worldcom, Inc.*, 401 B.R. 637, 650 (Bankr. S.D.N.Y. 2009); *Matter of Silver Mill Frozen Foods, Inc.*, 32 B.R. 783, 786 (Bankr. W.D. Mich. 1983). As the Third Circuit explained:

> [E]ven though a trustee in bankruptcy has a substantive legal relationship with the pre-bankruptcy debtor, the [t]rustee is not simply the successor in interest to the Debtor: he represents the interests of all creditors of the Debtor's bankruptcy estate. Because the trustee also represents the general creditors' interests, the legal relationship between the trustee and the pre-bankruptcy debtor is incomplete, particularly when the interests of the creditors diverge from those of the debtor.

*Montgomery*, 634 F.3d at 738 (quotation marks omitted).

Third, Pryor was not "adequately represented by someone with the same interests who was a party to the" Adversary Proceeding under the circumstances recognized in *Taylor*, 553 U.S. at 894. The Adversary Proceeding was not a class action, and Pryor at no point was a "fiduciary" of Fragala. *See id.* Nor has Myer's established that Fragala, in

litigating the Adversary Proceeding, had the same interests as Pryor, who "represents the interests of all creditors." *Montgomery*, 634 F.3d at 738.

With respect to the fourth and fifth exceptions, there is no indication that Pryor exercised any control over Fragala's defense of the Adversary Proceeding or that Pryor brought the Motion to Expunge as the "designated representative" of Fragala. *Taylor*, 553 U.S. at 895. And nothing in the record suggests that Pryor was Fragala's proxy, or vice versa.

Sixth, Myer's has identified no statutory scheme that forecloses successive objections by nonlitigants to the Adversary Proceeding. *Id.* And I am aware of no such authority.

Myer's fails to provide any legal authority for its argument in reply that Pryor was in privity with Fragala such that he was bound by the judgment in the Adversary Proceeding. (*See* Myer's' Reply at 17.)[17] This argument is entirely undeveloped in Myer's' briefing, which offers no discussion of the caselaw on privity or application to the facts. Indeed, Myer's' general gesture toward privity is contrary to the Supreme Court's warning against the application of "a diffuse balancing approach" to justify nonparty preclusion as in tension with the "fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party." *Taylor*, 553 U.S. at 898–900.

---

[17] To the extent that Myer's' use of the term "party in interest" is a reference to Bankruptcy Rule 3008, which provides that a "[a] party in interest may move for reconsideration" of a court's order allowing or disallowing a claim, Fed. R. Bankr. P. 3008, that rule governs who may move to reconsider a claim but does not address the circumstances when a litigant is bound by a ruling in a separate action to which that litigant is not a party.

Moreover, where a party refers to an issue in only "a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived[]— or, more precisely, *forfeited*." *In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (alterations omitted). For example, in *Genomma Lab USA, Inc. v. Carruitero*, the Second Circuit found that an appellant had waived an argument because its brief "did not contain the applicable standard of review" and "neglect[ed] to apply the case law to facts to raise an argument for reversing the district court's conclusions." No. 22-3109-CV, 2023 WL 8520181, at *2–3 (2d Cir. Dec. 8, 2023). Myer's' briefs on this appeal are similarly "tantamount to an invitation for [the Court] to scour the record, research any legal theory that comes to mind, and serve generally as an advocate for appellant." *Id.* In counseled cases like this one, that is "simply not [the] job" of a reviewing court. *Id.* By raising the concept of privity in only a conclusory and perfunctory manner, Myer's has forfeited his ability to argue that Pryor, a nonparty, should have been precluded from objecting to the allowance of Myer's' Claim in the Bankruptcy Action.

Myer's has thus failed both to establish that any exceptions to the general rule against nonparty preclusion applies to Pryor's Motion to Expunge and to adequately present this issue for appeal. Accordingly, I decline to find that the Dischargeability Opinion had a preclusive effect on Pryor[18] and need not determine whether any of the

---

[18] Myer's' emphasis that "[t]he Bankruptcy Court sent Appellee Pryor a copy of the judgment [in the Adversary Proceeding]," (Myer's' Br. at 18), does not compel a different outcome. As Myer's notes, the bankruptcy clerk was required under Rule 9022(a), Fed. R. Civ. P., to "forthwith transmit to the United States trustee a copy of [a] judgment or order" entered by the bankruptcy court. While Appellee Pryor had notice of the judgment in the Adversary Proceeding, notice of a judgment does not establish that Pryor was in privity with any party to the Adversary Proceeding. *See generally Taylor*, 553 U.S. at 593–94.

remaining elements of claim or issue preclusion are satisfied in this case. *See Taylor*, 553

U.S. at 892 (setting forth claim preclusion requirements); *Brown Media Corp.*, 854 F.3d

at 157; *In re Snyder*, 939 F.3d at 100 (setting forth issue preclusion requirements).

For all of these reasons, Pryor was not bound by the Dischargeability Opinion in

the Adversary Proceeding and did not need to file a motion to reconsider the judgment in

that action under Section 502(j) and Bankruptcy Rules 9023 or 9024 in order to object to

Myer's' Claim in the Bankruptcy Action. I therefore do not need to address the parties'

arguments on whether the Motion to Expunge complied with Bankruptcy Rules 9023 and

9024.[19]

### b. No Other Deadline Governs Pryor's Objection to the Claim.

Under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, an

objection to a claim may be brought at any time, so long as it is "filed and served at least

30 days before any scheduled hearing on the objection or any deadline for the claimant to

---

[19] Myer's argues that Pryor unreasonably delayed filing his objection to the Claim by waiting three years after it was filed, causing Myer's to spend "significant resources conducting discovery in the Bankruptcy case." (Myer's' Br. at 1–2.) This argument presumes that the Motion to Expunge was a motion to reconsider the Dischargeability Opinion under Section 502(j) and Bankruptcy Rule 9024, which requires a motion to be made within a reasonable time. *See* Fed. R. Bankr. P. 9024 (incorporating Rule 60(b)(1)); Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time . . . ."). I have found, however, that Bankruptcy Rule 9024 does not apply to Pryor's Motion to Expunge. Myer's provides no other legal authority requiring a court to consider whether a trustee objected to a claim within a "reasonable" amount of time. (*See generally* Myer's' Br.; Myer's' Reply.) Indeed, the plain language of Section 502 requiring the bankruptcy court to rule on objections is mandatory. *See* 11 U.S.C. § 502(b) ("[I]f [an] objection to a claim is made, the court, after notice and a hearing, *shall* determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and *shall* allow such claim in such amount, except" when one of the enumerated exceptions applies.) (emphasis supplied)); *see also In re C.P. Hall Co.*, 513 B.R. 540, 544 (Bankr. N.D. Ill. 2014) ("The court's obligation to rule on a claim objection is mandatory. . . ."). The bankruptcy court was thus required to rule on the Motion to Expunge, even though Pryor filed it three years after Myer's filed its Claim.

request a hearing." Fed. R. Bankr. P. 3007(a); *see also In re Best Payphones, Inc.*, 523 B.R. at 68 ("[B]ankruptcy law does not impose a statute of limitations on claims objections.") (collecting cases); *see generally* 11 U.S.C. § 726(a). At the time Pryor filed the Motion to Expunge on February 2, 2023, the bankruptcy court had not set any deadline for objections to claims or hearings on such a request, nor had the bankruptcy court scheduled any hearings on objections to claims. (*See* Docket, Bankr. ECF No. 25, **R. at 1–7**.) Because no statute, rule, or court order had established any deadline to file an objection to a proof of claim, Pryor's filing of the Motion to Expunge was timely.

Accordingly, Myer's has failed to show that the Dischargeability Opinion precluded Pryor from filing the Motion to Expunge in the Bankruptcy Action, or that any statute, rule, or court order required Pryor to object to the Claim within a particular timeframe. I therefore find that the bankruptcy court did not err in finding that the Motion to Expunge was timely filed.

### III.    The Bankruptcy Court Did Not Err in Granting Pryor's Motion on the Merits.

The bankruptcy court granted the Motion to Expunge, reasoning that there was no legal basis to hold Fragala, as an officer of the Corporation, personally liable for the Corporation's obligations on its snow removal contracts with Myer's. (*See* Myer's' Br. at 35–49.) I affirm the bankruptcy court's ruling for three reasons.

First, in opposition to the Motion to Expunge, Myer's failed to argue to the bankruptcy court that its Claim was allowable because the record supported piercing the Corporation's veil. Myer's' attempt to raise this argument for the first time on appeal is improper, and I do not address this argument for the reasons discussed below.

Second, I reject Myer's' argument that Fragala can be held personally liable for the Corporation's snow-removal contracts because his act of filing an answer and counter-complaint in the State Court Action "*waived* a defense under a corporate veil theory" and "conceded personal liability." (Myer's' Br. at 35–39 (emphasis supplied).) Myer's provides no legal support for this argument. Moreover, under Maryland law, a theory of personal liability for a corporation's debts is not a waivable defense, but a theory of liability that Myer's had to affirmatively plead and prove.

Third, Myer's failed to provide sufficient evidence of the Claim. This basis, alone, is sufficient to affirm the bankruptcy court's ruling on the Motion to Expunge.

A. Myer's Waived its Argument That it can Pierce the Corporate Veil due to Fragala's Fraudulent Actions by Failing to Raise it Before the Bankruptcy Court.

Myer's argues that the bankruptcy court erred in expunging the Claim because Fragala engaged in fraud, thereby permitting Myer's to pierce the corporate veil under New York state law. (Myer's' Br. at 47–49.) Pryor argues that the bankruptcy court rejected this argument in the Dischargeability Opinion issued in the Adversary Proceeding and that, under principles of collateral estoppel, Myer's therefore cannot raise it in opposition to the Expungement Order. (Pryor's Br. at 12.) Pryor also argues that the record in the Bankruptcy Action fails to satisfy the New York law requirements for piercing the corporate veil. (*Id.* at 14–17.) The record below does not support Pryor's invocation of collateral estoppel. Nevertheless, I do not reach Myer's' veil piercing argument because Myer's failed to raise it in the bankruptcy court in opposition to the Motion to Expunge.

26

"Nonmutual offensive collateral estoppel, a form of issue preclusion, precludes a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79 (2d Cir. 2019) (brackets and quotation marks omitted). A party that seeks to invoke this doctrine must establish the following:

> (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Id.* at 79–80.

Pryor cannot establish the fourth requirement for collateral estoppel, which requires showing that the bankruptcy court's resolution of the veil piercing issue was necessary to support a valid and final judgment on the merits of the Adversary Proceeding. "An issue is 'necessary or essential only when the final outcome hinges on it.'" *Id.* at 82 (quoting *Bobby v. Bies*, 556 U.S. 825, 835 (2009)). The bankruptcy court found in the Dischargeability Opinion that Myer's did not "satisfy the necessary elements of corporate veil piercing under New York Law." (Dischargeability Op. at 9, **R. at 1162**.) But the court ultimately concluded that "the outcome of this veil piercing analysis is *not determinative* of whether Myer's has a claim against the Debtor in this case." (*Id.* at 8, **R. at 1161** (emphasis supplied).) The final outcome of the Dischargeability Opinion therefore did not, by its plain terms, "hinge[]" on the bankruptcy court's rejection of Myer's veil piercing argument. *Bifolck*, 936 F.3d at 82. The doctrine of collateral estoppel, therefore, does not bar Myer's from raising its veil-piercing argument on appeal from the Expungement Order.

Nevertheless, Myer's cannot raise its veil-piercing argument on appeal from the Expungement Order because it failed to first make this argument to the bankruptcy court. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal . . . ." *Farhane v. United States*, 77 F.4th 123, 126 n.4 (2d Cir. 2023) (quotation marks omitted). While courts have "discretion to entertain new arguments where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding," appellate courts will "not normally" exercise this discretion to hear new arguments on appeal where the "arguments were available to the parties below and [the parties] proffer no reason for their failure to raise th[ose] arguments below." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 198–99 (2d Cir. 2018) (citing *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 615 (2d Cir. 2016)).

At no point in its briefing or oral argument on the Motion to Expunge did Myer's argue that the Claim was allowable against Fragala's individual bankruptcy estate because the record demonstrated Fragala's fraud and therefore supported piercing the corporate veil. (Bankr. ECF Nos. 85, 94, 97, 102, 108, **R. at 966, 970, 1013, 1036, 1063**; Mar. 13 Hr'g, Bankr., **R. at 1116**; Apr. 24 Hr'g.) Indeed, at the March 13, 2024 hearing, Judge Grossman specifically asked whether Myer's sought a hearing "to determine whether or not Mr. Fragala should be held individually liable for the acts of [the Corporation] in this proceeding." (Mar. 13 Hr'g at 15–16, **R. at 1130–31**.) Myer's' counsel responded, "No, your Honor, I'm not." (*Id.* at 16, **R. at 1131**.)

Despite its failure to raise this argument below, Myer's does not articulate any reason why this Court should make an exception to the general rule that an appellate

court will not hear arguments that were not first presented to the trial court. (*See generally*, Myer's' Br. at 35–49.) There is no basis for such an exception here for two reasons. First, the determination of whether Fragala's actions constituted fraud is not a pure legal question and would require this Court to engage in additional fact-finding. Myer's did not request an evidentiary hearing in response to the Motion to Expunge, and the bankruptcy court did not hold one or make any factual findings about whether Fragala's actions permit Myer's to pierce the corporate veil and hold Fragala personally liable for the Corporation's obligations under the snow-removal contracts. (*See* Mar. 13 Hr'g at 15–16, **R. at 1130–31**.) Second, Myer's does not argue that the Court must consider this veil piercing argument in order to remedy an obvious injustice. (*See generally* Myer's' Br.; Myer's' Reply.) Given Myer's' failure to preserve this argument below, the Court declines to consider it for the first time on appeal.[20]

### B. Myer's Fails to Show that Fragala Waived a Corporate Veil Defense.

Myer's argues that its Claim is allowable against Fragala's personal bankruptcy estate because Fragala "waived a defense under a corporate veil theory" when he "answered the [State Court Action] Complaint as an individual" and "used his individual posture as standing to also sue [Myer's] in the [State Court Action] and the Bankruptcy Court." (Myer's' Br. at 39.) Pryor did not respond to this argument as Myer's framed it,

---

[20] Myer's' briefing in this appeal recounts evidence presented solely in the bench trial in the Adversary Proceeding, *see supra* note 12, but does not explain why this Court must consider any specific arguments or evidence solely presented in that separate action in determining whether the bankruptcy court erred in expunging Myer's' Claim in the Bankruptcy Action. Even if Myer's had pointed to specific arguments or evidence presented solely in the Adversary Proceeding, I would decline to consider them on this appeal because Pryor was not a party to the Adversary Proceeding and thus did not have a full and fair opportunity to respond to those arguments or evidence as discussed above. *See supra* pp. 19–24; *Taylor*, 553 U.S. at 892–93.

and instead argued that Fragala's positions in the State Court Action did not amount to the showing of fraudulent activity necessary to establish that Myer's could pierce the corporate veil. (Pryor's Br at 15–16.)

Myer's argument presents a legal question. I therefore review de novo the bankruptcy court's rejection of this argument. Myer's' waiver argument is contrary to Maryland law on piercing the corporate veil, which applies to this question. I therefore find that Myer's fails to show that the Claim is allowable because Fragala purportedly waived a corporate veil defense in the State Court Action.

### a.  Bankruptcy Law Governing the Allowance of Claims

When resolving an objection to a claim, the bankruptcy court must allow the claim unless one of the exceptions enumerated in Section 502(b) applies. 11 U.S.C. § 502(b). Section 502(b)(1) "bars any claim that 'is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.'" *Ogle v. Fid. & Deposit Co. of Maryland*, 586 F.3d 143, 147 (2d Cir. 2009) (citing 11 U.S.C. § 502(b)(1)). The Supreme Court has "construed this wording to mean that 'any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy.'" *Id.* (quoting *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 444 (2007)). In order to determine whether a claim is enforceable, courts generally must look to state law, because "when the [Bankruptcy] Code uses the word 'claim,' [which the Code defines as] a 'right to payment,' it is usually referring to a right to payment under state law." *Travelers*, 549 U.S. at 444 (citing 11 U.S.C. § 101(5)(A)). Thus, in order to determine whether the bankruptcy court erred in rejecting the argument that the Claim was

enforceable against Fragala personally because he waived any corporate veil defense, I must first determine which state law applies.

### b.  Choice of Law

The parties both assert that New York law governs Myer's' Claim because the Corporation is incorporated in New York. (Myer's' Br. at 35; Pryor's Br. at 14, Myer's' Reply at 20). I disagree.

The Second Circuit has held that in order to determine which law should govern a claim in a bankruptcy case, bankruptcy courts should apply the "choice of law rules of the state where the underlying prepetition complaint was filed" so long as: "(1) the claim before the bankruptcy court is wholly derived from another claim already pending in a parallel, out-of-state, non-bankruptcy proceeding; and (2) the pending original, or 'source,' claim was filed in a court prior to the commencement of the bankruptcy case. *In re Coudert Bros. LLP* ("*Coudert I*"), 673 F.3d 180, 191 (2d Cir. 2012); *accord In re Coudert Bros. LLP* ("*Coudert II*"), 809 F.3d 94, 99 (2d Cir. 2015). In *Coudert I*, the Second Circuit found that a claim in bankruptcy that arose from a prepetition complaint filed in Connecticut should be governed by Connecticut's choice of law rules, rather than the choice of law rules of New York, the forum state of the bankruptcy action, reasoning that:

> it would be fundamentally unfair to allow [the debtor's] bankruptcy, coming as it did in the midst of the Connecticut action, to deprive [the claimant] of the state-law advantages adhering to the exercise of its venue privilege. To hold otherwise would be to allow the defendant [debtor] to use a device of federal law (the bankruptcy code) to choose the forum and accompanying choice of law—a practice forbidden by [the Supreme Court in *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)]. It would also lead to the ironic result that New York's anti-forum shopping

borrowing statute would be applied to defeat the claim of a party that did
not shop for New York as a forum.

*Coudert I*, 673 F.3d at 191.

Here, Myer's' Claim is "wholly derived" from the complaint Myer's filed in
Maryland before Fragala filed his petition for bankruptcy. (Proof of Claim; Bankr. ECF
Nos. 2, 94, **R. at 10, 972**.) Accordingly, I apply Maryland choice of law rules to
determine which law applies to the issue of whether and when a party may be held
individually liable for a corporate debt because they waived the protections of the
corporate veil.

Federal district courts in Maryland, when applying Maryland choice of law rules,
have found that "Maryland law is not clear about the choice-of-law principles it applies to
veil piercing." *Coastal Spray Foaming, LLC v. Reynolds Home Sols., Inc.*, No. CV 17-
00701-JMC, 2017 WL 2242666, at *2 n.2 (D. Md. May 23, 2017); *see also Ademiluyi v.
PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 513 (D. Md. 2013).
Indeed, I am not aware of any Maryland case setting forth any specific choice-of-law
principles with respect to a veil piercing analysis. "Maryland courts have applied
Maryland law, rather than the law of the state of incorporation, when determining
whether a plaintiff may pierce the veil of a corporation. *See Hildreth v. Tidewater Equip.
Co.*, 838 A.2d 1204, 1209 (Md. 2003) (applying Maryland law without discussion to find
that a shareholder of a New Jersey corporation could not be held personally liable for
corporate debts); *Ramlall v. MobilePro Corp.*, 30 A.3d 1003, 1009 (Md. App. 2011)
(applying Maryland law where plaintiff sought to pierce the veil of Delaware
corporation). Therefore, I will apply Maryland law to determine whether the bankruptcy

court erred in rejecting the argument that Myer's' Claim was allowable because Fragala

waived the protections of the corporate form due to his conduct in the State Court Action.

### c. Liability of Corporate Officers under Maryland Law

It is well established under Maryland Law that "[w]hen an official or agent signs a

contract for his corporation it is simply a corporate act[,] . . . not the personal act of the

individual, and he is not personally liable for the corporate contract unless the matter is

tainted by fraud." *Turner v. Turner*, 809 A.2d 18, 61 (Md. App. 2002) (citations and

alterations omitted); *accord Curtis G. Testerman Co. v. Buck*, 667 A.2d 649, 653 (Md.

1995). "[T]he corporate entity will be disregarded only when necessary to prevent fraud

or to enforce a paramount equity." *Hildreth*, 838 A.2d at 1209 (citations omitted). "[T]he

burden of proof of the fraud rests upon the creditor." *Turner*, 809 A.2d at 61 (citation and

brackets omitted).

Thus, a creditor seeking to hold a corporate officer personally liable for a

corporate debt bears the burden of proving that the officer's fraud permits piercing the

corporate veil. *Turner*, 809 A.2d at 61; *see also Hildreth*, 838 A.2d at 1211 (2003) ("[I]t

was [the plaintiff's] burden to prove" the existence of factors establishing a defendant's

personal liability for a corporation's debts). Maryland courts have described this to be a

"herculean" burden. *Coastal Spray Foaming*, 2017 WL 2242666, at *2 (citing *Residential*

*Warranty Corp. v. Bancroft Homes*, 728 A.2d 783, 790–791 (Md. App. 1999)

("Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a

corporation's veil.")).

Absent fraud, an officer may still be held personally liable for a corporation's

breach of contract under Maryland law "when there is . . . evidence . . . that the officer

intended to assume the obligation." *Testerman*, 667 A.2d at 653 (citation omitted). Courts determining "whether an officer of a corporation, signing an agreement, means to bind himself personally, must, as a general rule" make this determination based on "the face of the paper itself." *Whitmore v. Hawkins*, 2000 WL 828285, at *4–5 (4th Cir. 2000) (citing *Morrison v. Baechtold*, 48 A. 926, 929 (Md. 1901)). Where a contract is ambiguous on its face, parole evidence is admissible "to prove the circumstances under which the contract was made, or, in other words, to prove the true nature of the transaction." *Id.* (citing *Morrison*, 48 A. at 929)).

### d.  Analysis

There is no support in Maryland law for Myer's' argument that the Claim is enforceable against Fragala because he waived a corporate veil defense in the State Court Action by "cho[osing] to openly present himself as acting as an individual when he, in his individual capacity, answer[ed] the [State Court Action] Complaint." (Myer's' Br. at 36.) Myer's provides no legal authority for this argument, and instead cites only to a post-trial brief it filed in the Adversary Proceeding. (*Id.*) Even if the Court were to consider the post-trial brief Myer's filed in a separate action, that brief does not provide any legal support for this argument either. (*See* Adv. Proc. ECF No. 148 at 21–22.) Contrary to Myer's' contentions, under Maryland law, the corporate veil doctrine is not a defense that a defendant can waive if not timely raised. Rather, a creditor attempting to hold a corporate officer or director liable for the corporation's debts bears the burden of establishing that the defendant officer engaged in fraud such that the creditor may pierce the corporate veil. *Turner*, 809 A.2d at 61.

Myer's repeats the same waiver argument over and over again in various iterations. It asserts that Fragala has waived the protections of the corporate veil because he failed to challenge the state court's personal jurisdiction over him. (*See* Myer's' Br. at 39.)[21] Myer's also asserts that because the Corporation was registered in Maryland and named a resident agent three months before Fragala answered the State Court Action, Fragala's choice to answer the complaint and not to immediately file a motion to dismiss asserting a corporate veil defense further proves that he conceded personal liability for the Corporation's obligations. (*Id.* at 40–41.)[22] Myer's provides no legal support whatsoever for these arguments. Each is squarely contradicted by Maryland law establishing that a creditor must prove fraud in order to pierce the corporate veil and hold a corporate officer liable for the debts of the corporation. *See Turner*, 809 A.2d at 61.

Finally, Myer's fails to point to any evidence that Fragala intended to personally assume the obligations set forth in the Corporation's snow-removal contracts with Myers. Fragala disavowed that he intended to be bound by these contracts when he filed a motion to dismiss Myer's' amended complaint in the State Court Action, arguing that he

---

[21] At times, Myer's argues generally that Fragala "conceded personal liability." (*E.g.*, Myer's' Br. at 15.) Myer's' briefing, however, only advances the argument that Fragala "waived a defense under a corporate veil theory," and not that Fragala waived all defenses applicable to the State Court Action. Thus, I understand that Myer's' assertions that Fragala "conceded personal liability" refer to its argument that Fragala "conceded any right he may have had to a corporate veil when he answered the [State Court Action] Complaint as an individual." (Myers's' Br. at 37, 39, 49.)

[22] Pryor states that Myer's also argues that his Claim should be allowed because Fragala "failed to register [the Corporation], a New York Corporation in Maryland according to Maryland law," (Pryor's Br. at 15), but Myer's has disclaimed this argument as a separate basis for reversal of the Expungement Order. (Myer's' Br. at 39 ("Appellant has <u>not</u> contended that Co-Appellee Fragala conceded personal liability because he failed to register [the Corporation] in Maryland.").)

"executed" the contracts "in his capacity as President of [the] Corporation and as an agent

for the same" and "did not enter into these contracts in his individual capacity, as the

terms of said contracts are explicitly between Defendant Corporation and Plaintiff."

(Bankr. ECF No. 21-8 at 2, **R. at 227**.) Myer's failed to submit the snow removal

contracts in support of its Proof of Claim or even in opposition to the Motion to Expunge.

Thus, this Court has no basis to conclude that the face of these contracts shows that

Fragala "intended to assume the [Corporation's] obligation[s]." *Testerman*, 667 A.2d at

653; *see Whitmore*, 2000 WL 828285, at *4–5.

For all of these reasons, Myer's has failed to establish that its Claim for breach of

its snow-removal contracts with the Corporation is enforceable against Fragala in his

individual Bankruptcy Action.[23] Accordingly, I find that the bankruptcy court's decision

to expunge the Claim was not in error under 11 U.S.C. § 502(b)(1).

---

[23] Even if New York law applies to the bankruptcy court's determination as to whether
Fragala waived a corporate veil defense, the outcome of this analysis would not change.
Like Maryland law, New York law prevents corporate officers from being "held
personally liable on contracts of their corporations, provided they did not purport to bind
themselves individually under such contracts." *Lido Beach Towers v. Denis A. Miller Ins.
Agency*, 11 N.Y.S.3d 192, 193 (App. Div. 2015) (citations omitted). Thus, under New
York law, "when an officer or director acts on behalf of his or her corporation, he or she
may not be held liable for inducing the corporation to violate its contractual obligations
unless his or her activity involves separate tortious conduct or results in personal profit."
*Stern v. H. DiMarzo, Inc.*, 909 N.Y.S.2d 480, 481 (App. Div. 2010) (citation and brackets
omitted). And, as under Maryland law, a creditor seeking hold a corporate officer or
director liable for the corporation's debt or obligation under New York law "bears the
heavy burden of showing" that the court may pierce the corporate veil. *Skanska USA
Bldg. Inc. v. Atl. Yards B2 Owner, LLC*, 40 N.Y.S.3d 46, 54 (App. Div. 2016) (quotation
marks omitted), *aff'd*, 98 N.E.3d 720 (2018). Myer's fails to meet these standards for
enforcing its snow-removal contracts with the Corporation against Fragala personally.

C.  Myer's Failed to Provide Sufficient Proof in Support of its Claim.

Lastly, I affirm the bankruptcy court's ruling that the Claim is not allowed because Myer's provided insufficient proof to support the Claim. Although neither the Expungement Order nor the parties address this issue, an appellate court reviewing a bankruptcy order "may affirm on any ground that finds support in the record[] and need not limit its review to the bases raised or relied upon in the decisions below." *Russo v. Wells Fargo N.A.*, No. 23-cv-02359, 2024 WL 1348523, at *3 (E.D.N.Y. Mar. 29, 2024); *Rora*, 630 B.R. at 882 (citation omitted). Even if the bankruptcy court erred in rejecting Myer's argument that the Claim was enforceable against Fragala as an individual because he waived a corporate veil defense in the State Court Action, Myer's' failure to provide sufficient proof in support of its Claim is an independent basis to affirm the bankruptcy court.

Rule 3001 of the Federal Rules of Bankruptcy ("Bankruptcy Rule 3001") "governs the substantive and procedural requirements for proof of claims against bankruptcy estates." *Russo*, 2024 WL 1348523, at *4; *see generally* Fed. R. Bankr. P. 3001. Under Bankruptcy Rule 3001, "[w]hen a claim . . . is based on a writing, a copy of the writing shall be filed with the proof of claim." Fed. R. Bankr. P. 3001(c)(1).

To make out a *prima facie* case for the validity of a claim, "[t]he claimant must allege facts sufficient to support the claim and attach supporting documentation to a proof of claim." *Brancato*, 2023 WL 5127334, at *6; *see also* Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with [Bankruptcy Rule 3001] shall constitute prima facie evidence of the validity and amount of the claim."). Where the claimant has established a *prima facie* case for their claim, the "objecting party must

present to the Court evidence which, if believed, would refute at least one of the allegations essential to the claim." *Russo*, 2024 WL 1348523, at *4 (quotation marks and citation omitted). Once an objector produces evidence sufficient to "negate a claim's presumptive legal validity," the burden then shifts "back to the claimant to prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Id.* (quotation marks and citation omitted).

Where a proof of claim is "not supported by the requisite documentation," it "is not presumed to be *prima facie* valid." *Brancato*, 2023 WL 5127334, at *6; *see also In re Benyamin*, 587 B.R. 243, 249 (Bankr. S.D.N.Y. 2018) ("Failure to attach the documentation required by Bankruptcy Rule 3001 will result in the loss of the *prima facie* validity of the claim.") (citations omitted), *on reconsideration*, 596 B.R. 789 (Bankr. S.D.N.Y. 2019), *aff'd*, No. 17-12677-MG, 2020 WL 2832815 (S.D.N.Y. June 1, 2020); *In re Aiolova*, No. 11-10503 (BRL), 2013 WL 5818893, at *3 (Bankr. S.D.N.Y. Oct. 29, 2013) ("Here, Jackman has not submitted any documentation to support his Claim, and therefore has not met his prima facie burden."); *cf. In re Zubair*, No. 20-cv-8829, 2021 WL 4974811, at *8 (S.D.N.Y. Oct. 26, 2021) (holding that the proof of claims "contain[ed] all of the requisite elements: (i) they were filed on an Official Form 410; (ii) contain an itemized list including the principal balance, interest, fees, costs, and total debt due; and (iii) include as attachments copies of the Note, recorded Mortgage, recorded Assignment and escrow account disclosure statement.").

When an objection is raised to a claim that is "not entitled to prima facie validity," the claimant "bears the burden of demonstrating the validity and amount of the Claim by

a preponderance of the evidence." *In re Brown*, No. 18-10617, 2023 WL 6051957, at *10 (Bankr. S.D.N.Y. Sept. 15, 2023).

Accordingly, courts in this Circuit have sustained objections to claims for insufficient evidence where: (1) the claimant failed to comply with Bankruptcy Rule 3001 and did not merit the presumption of *prima facie* validity, and (2) when faced with an objection, the claimant failed to prove by a preponderance of the evidence that the claim was valid and enforceable against the Debtor under Section 502(b)(1). *See In re Brown*, 2023 WL 6051957, at *10 (disallowing claim under Section 502(b)(1) because claimant "failed to . . . prov[] by a preponderance of the evidence . . . that the Claim [wa]s valid and enforceable against the Debtor" where he failed to attach any documents in support of the claim, including the loan agreement upon which the claim was based); *see also In re Minbatiwalla*, 424 B.R. 104, 119 (Bankr. S.D.N.Y. 2010) (citing *In re DePugh*, 409 B.R. 125, 137–38 (Bankr. S.D.Tex. 2009)).

Reviewing the evidence submitted by Myer's in support of its Claim in the Bankruptcy Action,[24] Myer's failed to comply with Bankruptcy Rule 3001 and its Claim was not entitled to the presumption of *prime facie* validity. When Pryor objected to Myer's' Claim, Myer's failed to meet its burden of proving that the Claim was valid and enforceable against Fragala personally.

---

[24] Myer's repeatedly cites to evidence presented in the Adversary Proceeding, but that evidence was not before Pryor or the bankruptcy court when it ruled on Pryor's Motion to Expunge, as noted above. *See supra* note 20. While Myer's argues that Pryor had notice of the Dischargeability Order, there is no evidence in the record that Myer's ever provided Pryor with the evidence admitted and considered in the adjudication of the Adversary Proceeding.

Myer's filed only two documents along with its Proof of Claim: (1) a short document titled "Statement of Account of Russell Fragala" which briefly states that Fragala assertedly owed Myer's $92,366.80, calculated by adding a $58,4600.00 "Unpaid Balance as of March 3, 2017" and $33,906.80 in "[l]ate charges @ 2% per month up to August 3, 2019," (Proof of Claim, Ex. 1, **R. at 1023**); and (2) a document filed in the State Court Action titled "Plaintiffs' [sic] Pretrial Statement," which provided unsworn allegations about the Corporation's breach of contract and referred to the Corporation and Fragala collectively as "Fragala" (Proof of Claim, Ex. 2, **R. at 1024**). This Pretrial Statement was signed only by Burke, counsel for Myer's. (*Id.* at 12, **R. at 1035**.) Although the document refers to other documentary and deposition evidence, no documents or transcripts of depositions were submitted in support of the proof of Claim. (*Id.* at 3, 12, **R. at 1027, 1035**.)

While Bankruptcy Rule 3001(c)(1) requires that "[w]hen a claim . . . is based on a writing, a copy of the writing shall be filed with the proof of claim," Myer's did not submit the 22 snow-removal contracts with the Corporation on which its Claim against Fragala is based. Because Myer's failed to submit documentation required by Bankruptcy Rule 3001(c), it was not entitled to the presumption that its Claim was *prima facie* valid. *In re Brown*, 2023 WL 6051957, at *10; *Brancato*, 2023 WL 5127334, at *6; *In re Benyamin*, 587 B.R. 243, 249 (Bankr. S.D.N.Y. 2018). Thus, when Pryor objected to the Claim, Myer's was required to present sufficient evidence to establish by a preponderance of evidence that its Claim was enforceable against Fragala. *See Russo*, 2024 WL 1348523, at *4.

40

In response to the Motion to Expunge, Myer's submitted only the following: (1) a copy of the docket sheet in the appeal from the Adversary Proceeding (Bankr. ECF No. 94-1, **R. at 983–85**); an email Burke submitted to Fragala's then-counsel, Richard Kanter, enclosing a short excerpt from the transcript of a deposition of Jerry Bender, who identifies himself as a market account manager of BrightView Enterprise Landscapes, LLC and states that he previously worked with Fragala (Bankr. ECF No. 94-2, **R. at 986– 96**); (2) the "Addendum to 2016-2017 Snow Removal Contract," which was signed by "Russ Fragala – President" and "Rob Meyers – Myer's Lawn Care Services" and lists three terms relating to a schedule of payment, including that "all corresponding invoices for monthly services rendered including supporting necessary documentation must be submitted to Russ Fragala Landscape Corp. . . ." (Bankr. ECF No. 94-3, **R. at 997–98**); (4) an unsigned letter from Myer's' counsel to Pryor dated January 26, 2023, discussing the issues Myer's identified with the bankruptcy court's Dischargeability Opinion (Bankr. ECF No. 94-4, **R. at 999–1003**); (5) a copy of registration records showing that the Corporation was registered in Maryland on October 25, 2017 (Bankr. ECF No. 94-5, **R. at 1003–06**); and (6) a copy of record tax liens against the Corporation (Bankr. ECF No. 94-6, **R. at 1007–12**). In a supplemental response to the Motion to Expunge, Myer's re-filed its "Pretrial Statement" (Bankr. ECF No. 102) and submitted the motion Myer's had filed in the State Court Action to stay that proceeding in light of Fragala's pending Bankruptcy Action. (Bankr. ECF No. 106.)

These submissions fail to establish that the contracts on which Myer's' Claim was based were enforceable against Fragala as an individual. Contrary to Myer's' position, the Addendum to 2016-2017 Snow Removal Contract appears to confirm that the

Corporation's debts under the snow-removal contracts flow to the Corporation—not to Fragala, who signed the Addendum in his capacity as the Corporation's president. Accordingly, the bankruptcy court did not err in expunging the claim under 11 U.S.C. § 502(a)(1) because Myer's failed to submit sufficient evidence to establish a *prima facie* case in support of its Claim, and upon objection, failed to establish by a preponderance of evidence that the Claim was valid and enforceable. *In re Brown*, 2023 WL 6051957, at *10.

## CONCLUSION

For the reasons stated above, I find that the bankruptcy court did not err in granting Pryor's Motion to Expunge Myer's' Claim. Accordingly, I affirm the bankruptcy court's April 26, 2023 decision (Bankr. ECF No. 110, **R. at 1067**) and deny Myer's' appeal (ECF No. 1) in its entirety.

Dated: Central Islip, New York
August 6, 2024

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge